IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 10, 2001

## STATE OF TENNESSEE v. CURTIS CLEGGINS

**Appeal from the Criminal Court for Shelby County**
**No. 99-00723     Bernie Weinman, Judge**

_____

**No. W1999-00657-CCA-R3-CD  - Filed February 23, 2001**

_____

The defendant, indicted for aggravated sexual battery for intentionally engaging in sexual contact with a child under the age of thirteen, pled guilty to one count of sexual battery, a Class E felony, and received a two-year sentence. The trial court ordered that the defendant serve ninety consecutive days in jail, with the remainder of the sentence suspended, and the defendant placed on three years' probation. Counseling was ordered as a condition of probation. The defendant challenges the sentencing imposed, arguing that the trial court erred in denying his requests for full probation, service of his sentence of incarceration on weekends, or judicial diversion. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Joseph S. Ozment, Memphis, Tennessee, for the appellant, Curtis Cleggins.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alanda Home Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In exchange for an agreed sentence of two years, the defendant pled guilty to one count of sexual battery for having sexual contact with the eleven-year-old victim. The trial court denied his request for alternative sentencing or judicial diversion, ordering that the defendant serve ninety days in jail, with the remainder of the sentence suspended and the defendant placed on three years of probation. As a condition of probation, the defendant was ordered to undergo counseling. The defendant filed a timely appeal to this court, presenting the following issues for our review:

I.      Whether the trial court erred in denying him full probation;

II. Whether the trial court erred in denying his request to be allowed to serve his sentence of confinement on weekends; and,

III. Whether the trial court erred in denying him judicial diversion.

Based upon our review of the record, we affirm the sentence as imposed by the trial court.

## FACTS

On January 26, 1999, the defendant, Curtis Cleggins, was indicted by the Shelby County Grand Jury for one count of aggravated sexual battery of G.P., an eleven-year-old child.[1] At the time of the incident, the defendant was the live-in boyfriend of the victim's mother, and the victim resided in the same household with the defendant. At the defendant's guilty plea hearing, the State asserted that if the case went to trial, it intended to offer proof that on October 24, 1998, the defendant had entered the victim's bedroom and touched her between her legs. The defendant agreed to enter a plea of guilty, and on September 7, 1999, the trial court accepted his guilty plea to one count of sexual battery.

A sentencing hearing was held on October 7, 1999. The defendant testified that he was a resident of Tennessee and a former Marine. He blamed his 1986 "other than honorable discharge" from the service on his "enhanced gouty-arthritis" and an old gunshot wound, which he said had prevented him from performing his duties. He claimed that his condition was so severe that he could not use his hands and had to have assistance in dressing. In 1992, he had returned to Memphis, where close family members lived. Despite his arthritis, for which he believed he would be eligible for disability, although he had never applied, he had held jobs in construction, recycling, and at a computer company, before accepting his current position as a "special projects manager" at a warehouse.

The defendant explained two past criminal charges against him, for passing a bad check and possession of a stolen vehicle, as misunderstandings. The bad check charge had resulted from a store clerk's failure to hold his check until he could deposit funds into his account, and his arrest for possession of a stolen vehicle had occurred when he was holding an automobile for a military friend who had gone overseas. According to the defendant, both charges had been dismissed. He admitted one conviction for driving on a suspended license, but stated that he had paid the fine and currently held a valid Tennessee driver's license.

The defendant claimed to be actively involved in his community. He testified that he had started a summer youth program, in which he took neighborhood children to the park to teach them

---

[1] Consistent with the policy of this court, we refer to the minor victim by her initials only.

how to play football and to talk to them about the military; had participated in organizing a neighborhood watch; had helped develop a program to teach children swimming and pool safety; and had volunteered to act as an unofficial lifeguard for the children at his apartment complex's pool.

On cross-examination, the defendant denied lying to the police officers who had arrested him, by telling them that he was scheduled to enter the Memphis Police Academy in January 1999. He insisted that neither the charge for passing a bad check, nor the charge for possession of a stolen vehicle, had in any way been his fault. The defendant also refused to admit any wrongdoing with regards to the victim. He acknowledged that he had gone into the victim's bedroom on October 24, 1998, but would only admit to shutting her window and tucking her into bed. He described G.P. as a child with "problems" and said that she had a tendency to lie. According to the defendant, the victim had been angry at him because he had attempted to punish her for her misbehavior. The defendant expressed disillusionment with the justice system, and said that he needed counseling in order for somebody from "the system" to tell him that he was a "good man," so that he would not "loose [sic] faith in [the system]."

In response to probing questions by the trial court, the defendant admitted that his other than honorable military discharge had resulted from his refusal to follow orders. The defendant said that his position as warehouse "special projects manager" meant that he drove a forklift. He explained that he was able to do so, despite his earlier testimony that he was unable to use his hands, because shifting forklift gears did not require him to bend any of his joints. He also explained that he was on "some very strong medication."

Two witnesses took the stand to attest to the defendant's good character. Terry Figgs, a prison corrections officer, testified that he had known the defendant for about twenty years. Figgs described the defendant as "humble," "just a really nice person." He believed the defendant to be honest, had never seen him get angry, and trusted him to be around his own children. Figgs expressed his opinion that the defendant would abide by any conditions of probation that the trial court might impose.

Mary Dean, the defendant's fiancé, stated that the defendant had lived with her for almost a year, and that she had found him to be "very good" with her two thirteen-year-old daughters. She trusted him, and did not believe that he had done anything wrong. He had discussed with her whether he should plead guilty, and together they had weighed the odds and decided that it would be too risky for him to go to trial.

Dean was asked to describe the defendant's physical condition, and the following exchange between her and defense counsel took place:

> A.  Yes, sometimes his arthritis gets really bad. I try to keep his
> medicine at home and stuff and sometimes even after he takes
> his medicine, I mean, he can barely move his hands. He was
> telling me the situation that alleged was so supposed to have

> happened and I couldn't see it. I wasn't there, I don't know.
> But, I couldn't see him physically doing what they said he had
> did.
>
> Q. I believe there was an allegation that he may have unzipped
> some pants, or something of that nature? I don't know.
>
> A. Yeah. And if you look at his hands, you can tell that–I mean, he
> can't –I don't feel that he could have actually done that without
> the person knowing way before they got to that situation. He
> would have known. I mean, because he can't use his hands that
> well.

Dean stated that she often had to assist the defendant to dress, because of the severe pain he experienced from his arthritis. Upon questioning by the trial court, however, she admitted that the defendant was, at times, capable of zipping and unzipping his pants himself, because "[h]is arthritis doesn't flare up all of the time[.]"

The victim's mother and father testified to the detrimental emotional effects that the defendant's actions had had on their daughter. Pamela Watkins, the victim's mother, said that G.P. continued to think about the incident and was "having a hard time." Calvin Perry, G.P.'s father, said that it had taken his daughter a long time after the incident before she would hug him, and that she had blamed him for not being there to protect her from the defendant. Both parents asked that the trial court sentence the defendant to serve time in jail.

At the conclusion of the hearing, the trial sentenced the defendant to ninety consecutive days in jail, finding that confinement was appropriate under the facts and circumstances of the case. The court ordered that the defendant be placed on three years' probation upon his release from jail, and that he undergo counseling as a condition of probation. The court denied the defendant's request to serve his time on weekends, finding that "straight time" was "appropriate." The defendant timely appealed his sentence to this court.

## ANALYSIS

The defendant appeals the sentence imposed by the trial court, arguing that the court erred in denying him immediate full probation, or, in the alternative, service of his jail time on weekends, or judicial diversion. The State argues that the record supports the trial court's sentencing determinations, and that the sentence should therefore be affirmed.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court

considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), perm. app. denied (Tenn. 1994). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

The defendant, as the party challenging the sentence imposed by the trial court, has the burden of establishing that his sentence was erroneous. Sentencing Commission Cmts. to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. In determining whether the defendant has shown that the sentence imposed by the trial court was erroneous, this court considers (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987).

## I. Denial of Full Probation or Weekend Service of Incarceration

The defendant first argues that he should have been sentenced to immediate full probation, or, in the alternative, allowed to serve his jail time on weekends. He contends that the trial court inappropriately focused on the circumstances of the offense to the exclusion of his social history. The defendant asserts that his social background, history of steady employment, involvement in the community, and lack of prior felonies make him an appropriate candidate for alternative sentencing, and support a sentence of full probation.

An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing, in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (1997). As a standard offender who pled guilty to a Class E felony, the defendant was presumed to be a favorable candidate for alternative sentencing. However, if the court is presented with "evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision." Ashby, 823 S.W.2d at 169. The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made a part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App.), perm. app. denied (Tenn. 1996). Evidence sufficient to overcome the presumption includes evidence showing that "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct," "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or "[m]easures less

restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A)-(C) (1997); see Ashby, 823 S.W.2d at 169.

The burden was upon the defendant to show that he was a suitable candidate for probation. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App.), perm. app. denied (Tenn. 1996); see Tenn. Code Ann. § 40-35-303(b) (1997). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

In this case, the trial court indicated that it was sentencing the defendant to ninety consecutive days in jail, and denying his request for full probation, based on the seriousness of the offense and the defendant's lack of credibility. At the conclusion of the proof, the trial court stated that it found "much of [the defendant's] testimony," including his testimony regarding his past military history and the severity of his physical ailments, "not to be believable." The trial court found the defendant to be a deceptive and manipulative individual. The trial court is in the best position to determine the credibility of a witness, and this court gives deference to the trial court's findings in that regard. The trial court clearly considered the nature and circumstances of the offense, the defendant's lack of candor, and the defendant's refusal to acknowledge any wrongdoing, in determining that the "under all of the facts and circumstances, jail time is appropriate." The record supports the trial court's determinations. This court has held previously that a defendant's untruthful testimony during a sentencing hearing can be the basis for the trial court's denying probation to the defendant. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994); State v. Dykes, 803 S.W.2d 250, 259-60 (Tenn. Crim. App.), perm. app. denied (Tenn. 1990). We therefore conclude that the trial court did not err in denying the defendant full probation or service of his jail sentence on weekends.

## II. Denial of Judicial Diversion

The defendant next argues that the trial court erred in denying him judicial diversion. He asserts that his lack of a serious criminal record, his amenability to correction as evidenced by testimony that he would comply with the terms and conditions of probation, and his social history,

weigh in favor of his being granted judicial diversion. The State points out that judicial diversion may appropriately be denied based solely on a defendant's lack of candor and refusal to accept responsibility for an offense, and argues that the trial court did not abuse its broad discretion in denying the request.

The judicial diversion statute, Tennessee Code Annotated Section 40-35-313 permits a trial court, upon a finding of guilt by plea or by trial, to place a defendant on probation without imposition of a judgment of conviction. If the defendant successfully completes his term of probation, the charge is then dismissed. See Tenn. Code Ann. §40-35-313 (Supp. 1998); State v. Beverly, 894 S.W.2d 292, 293 (Tenn. Crim. App. 1994). The decision to grant or deny a defendant judicial diversion lies within the sound discretion of the trial court. State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). A trial court's refusal to grant judicial diversion will not be disturbed on appeal unless no substantial evidence exists in the record to support the trial court's decision. Id. "The same guidelines are applicable in diversion cases as are applicable in probation cases, but they are more stringently applied to those seeking diversion." Bingham, 910 S.W.2d at 456 (citing State v. Holland, 661 S.W.2d 91, 93 (Tenn. Crim. App. 1983)). In determining whether to grant diversion, the trial court considers (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); Bonestel, 871 S.W.2d at 168.

Substantial evidence exists in the record to support the trial court's denial of judicial diversion. The trial court considered the evidence, including testimony presented by the defendant and his witnesses, and found that the defendant was deceptive, manipulative, and unwilling to accept responsibility for his actions. This was a sufficient basis upon which to deny the defendant judicial diversion. See State v. Dowdy, 894 S.W.2d 301, 307 (Tenn. Crim. App. 1994). Therefore, we conclude that the trial court did not abuse its discretion in denying the defendant judicial diversion.

## CONCLUSION

Based on the foregoing, we affirm the sentence as imposed by the trial court.

_____
ALAN E. GLENN, JUDGE